## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ZANDER E. STAGER,**

        **Plaintiff,**

     **v.**

**JEREMY HANSHAW,** *et al.,*

        **Defendants.**

**Case No. 1:23-cv-120**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

Lawrence County Sheriff's Deputy Jeremy Hanshaw arrested Zander Stager and charged him with Obstructing Official Business, then charged him with Resisting Arrest. After the prosecutor entered a *nolle prosequi* on the charges, Stager responded by suing Hanshaw and Lawrence County Sheriff Jeff Lawless. (Compl., Doc. 1). He brought an eight-count Complaint, asserting five claims via the Civil Rights Act of 1871, 42 U.S.C. § 1983, citing the Fourth and Fourteenth Amendments;[1] one state-law claim for false imprisonment; one state-law claim for assault and battery;[2] and

---

[1] Technically, because these are state actors, the Fourth Amendment claims are really Fourteenth Amendment claims, in that the Fourteenth Amendment incorporates the Fourth Amendment and applies it against the States. *See Mapp v. Ohio,* 367 U.S. 643, 650–51 (1961) (recognizing that the Fourth Amendment's protection against unreasonable searches and seizures was incorporated against the states in *Wolf v. Colorado,* 338 U.S. 25 (1949)). In its decision here, though, the Court will refer to the claims as arising under the Fourth Amendment.

[2] Assault and battery are related but distinct torts under Ohio law. *Morrison v. Horseshoe Casino,* 157 N.E.3d 406, 433 ("An assault is defined as the *willful threat or attempt to harm or touch* another offensively, coupled with a definitive act by one who has an apparent present ability to do harm or to commit the offenses of touching. A battery is defined as a *harmful or offensive touching*[.]") (citations omitted and emphasis added). But because Stager characterizes Count VI as a single state-law claim for both torts, and because the Court's

one state-law claim for intentional infliction of emotional distress (IIED). (Doc. 1, #4–10). He asserts three of the § 1983 claims (excessive force, unlawful arrest, and false imprisonment), along with the state-law false imprisonment and assault and battery claims, only against Hanshaw; one § 1983 claim (failure to train and supervise) only against Lawless; and one § 1983 claim (malicious prosecution) and IIED against both Defendants. He also avers that any claim that names any Defendant names that Defendant in both his individual and official capacities. (*Id.* at #3).

The matter is now before the Court on Defendants' motion seeking partial dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 6). For the reasons below, the Court **GRANTS IN PART** Defendants' Partial Motion to Dismiss (Doc. 6), but finds that the individual-capacity claims against Hanshaw in Counts I, II, III, VI, and VIII may proceed.

## BACKGROUND

The facts here are straightforward.[3] On February 28, 2022, Hanshaw discovered Stager asleep in the driver's seat of his vehicle on the streets of Ironton, Ohio. (Doc. 1, #3). When Stager "did not answer Deputy Hanshaw's inquiries fast enough," Hanshaw "began to assault" him by "utiliz[ing] a number of unnecessary and dangerous physical maneuvers." (*Id.*). Ironton police eventually took Stager to

---

disposition does not turn on any distinction between them, the Court will refer to them as a single claim throughout this Opinion and Order.

[3] This matter is before the Court on a Rule 12(b)(6) motion to dismiss. For purposes of a motion to dismiss, the Court accepts Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Accordingly, the Court relies on Stager's allegations in describing the background, but with the caveat that they are only allegations.

the Lawrence County Jail. (*Id.*). Hanshaw first charged Stager with Obstructing Official Business, then a few days later added a Resisting Arrest charge. (*Id.*). "The matter proceeded to the Ironton (OH) Municipal Court where it was resolved by the prosecutor's entry of a *nolle prosequi*." (*Id.*).

Based on these factual allegations, Stager filed an eight-count Complaint suing Hanshaw and Lawless in both their individual and official capacities. (*Id.*). As previewed above, the counts include: one § 1983 count against Hanshaw alleging excessive force in violation of the Fourth and/or Fourteenth Amendments (Count I); one § 1983 count against Hanshaw, alleging unlawful arrest and seizure in violation of the Fourth and/or Fourteenth Amendments (Count II); one § 1983 count against Hanshaw for false imprisonment in violation of the Fourth and/or Fourteenth Amendments (Count III); one state-law claim against Hanshaw for false imprisonment (Count IV); one § 1983 count against Lawless for negligent hiring, training, and supervision in connection with Hanshaw's alleged Fourth Amendment violations (Count V); one state-law claim for assault and battery against Hanshaw (Count VI); one state-law claim against both Defendants for IIED (Count VII); and one § 1983 count against both Defendants for malicious prosecution (Count VIII).[4] (Doc. 1, #4–10). For relief, Stager seeks compensatory and punitive damages, as well as costs and attorney's fees. (*Id.* at #11).

---

[4] Although the Complaint does not state the constitutional basis for the § 1983 malicious prosecution claim, the Sixth Circuit has held that such claims arise under the Fourth Amendment. *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006) ("We recognize a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment.") (citation and quotation omitted).

After the Court granted Defendants' request (Doc. 5) for an extension of time to answer, (7/28/23 Not. Order), Defendants simultaneously answered, (Doc. 7), and moved to partially dismiss the Complaint, (Doc. 6). As to the latter, they first argue the Court should dismiss all five official-capacity § 1983 claims (parts of Counts I, II, III, V, and VIII) because the Complaint does not plausibly allege Defendants acted pursuant to an official policy or custom, a requirement that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), imposes. (Doc. 6, #27–34). Second, they argue the § 1983 claims against Lawless in his individual capacity fail because Stager does not allege Lawless played any direct role in his arrest and insufficiently alleges a theory of supervisory liability. (*Id.* at #34–35). Third, they argue the § 1983 malicious prosecution claim fails in its entirety because Stager never alleges he suffered a deprivation of liberty apart from the initial seizure—a necessary element of such claims. (*Id.* at #36–37).

Turning to the state-law claims, Defendants argue they both are statutorily immune as to the state-law claims in both their official and individual capacities. (*Id.* at #37–39). They next argue the state-law false imprisonment claim fails as a matter of law because that tort only applies to matters between private persons. (*Id.* at #39–40). Finally, they argue the IIED claim against Lawless fails as a matter of law because Plaintiff neither alleges Lawless was present during the incident nor alleges other details to support the claim. (*Id.* at #40–41).

Stager responded. (Doc. 8). To start, he claims Defendants conceded one of his § 1983 claims—his failure to train claim (Count V)—was adequately pleaded when

4

they said that claim "appears to assert three out of four avenues [by which] a plaintiff can establish a § 1983 claim pursuant to a municipal policy or custom." (*Id.* at #55). He then argues that (1) his official-capacity § 1983 claims survive because "Defendants are on notice of what the official-capacity claims are in this case, and the grounds for those claims"; (2) "Lawless at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of" Hanshaw; (3) Stager participated in a pretrial release program, which constitutes a deprivation of liberty apart from the initial seizure and therefore suffices to allege his § 1983 malicious prosecution claim; (4) Hanshaw is not immune as to the state-law claims because he acted maliciously, in bad faith, and/or wantonly or recklessly; (5) and Lawless is not immune as to the state-law claims because he ratified Hanshaw's conduct. (*Id.* at #55–61 (cleaned up)).

Defendants replied. (Doc. 9). They reiterate their previous arguments, adding that conclusory allegations cannot support Stager's claims. (*Id.* at #62–70). They also say that, because Stager did not respond to their argument that the false imprisonment claim should be dismissed, he has conceded that argument. (*Id.*at #70).

The matter is now before the Court on the Partial Motion to Dismiss.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer

possibility that a defendant has acted unlawfully." *Id.* (citation omitted). The complaint must allege sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* In other words, a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege as gospel, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58

6

F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings … However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." (cleaned up)).

## LAW AND ANALYSIS

Although the Motion to Dismiss is "partial," it attacks all or parts of every claim in the Complaint. And because there are eight counts, each directed at one or both of the two Defendants, and with each claim asserted in two capacities—individual and official—the Court has a lot on its plate. Accordingly, a brief roadmap is in order. The Court begins with the challenge to the official-capacity aspects of the § 1983 claims, which Defendants attack on a ground that applies equally to each of the claims. It next addresses the challenge to the § 1983 claims against Lawless in his individual capacity, before turning to the § 1983 malicious prosecution claim, which Defendants seek to dismiss in its entirety. It then considers the state-law claims, starting with the false imprisonment and IIED claims. Finally, it addresses the assault and battery claim, along with state-law immunity.

## A.    The Official-Capacity § 1983 Claims

Start with the five § 1983 claims asserted against Lawless, Stager, or both, in their official capacities: Counts I–III, V, and VIII. In their Partial Motion to Dismiss, Defendants argue the Court should dismiss these claims because the official-capacity claims are really claims against a governmental entity and Stager has not plausibly

alleged the existence of an illegal policy or custom—a necessary element of a § 1983 claim against a municipality. (Doc. 6, #27–34). As explained below, the Court agrees.

### 1.     The Legal Standard

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Any claim against either Stager or Lawless in their official capacities, then, is the equivalent of suing Lawrence County—the governmental entity that employs them.

A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). As to the latter, "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may prove that a defendant has an actionable, unconstitutional "policy" or "custom" in place by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th

Cir. 2013) (citing *Thomas*, 398 F.3d at 429). Stager has not plausibly alleged an actionable policy or custom under any of the four avenues *Thomas* described.

### 2.    The Claims Against Lawrence County

### a.    Official Policy

Consider first whether Stager has alleged that an illegal, official policy exists. To survive a motion to dismiss based on that theory, he needs to "allege facts that point towards a policy or custom that forms the basis of [his] claim." *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802682, at *7 (N.D. Ohio July 13, 2010); *see also Austin v. City of Cincinnati*, No. 1:15-cv-608, 2016 WL 1718264, at *2 (S.D. Ohio Apr. 28, 2016) ("[T]he Complaint itself is devoid of any factual enhancement that would allow the Court to reasonable [sic] infer the existence of an alleged policy that caused any particular constitutional violation."). But the Complaint cites no facts suggesting that a specific, official policy of the Lawrence County Sheriff's Department led to Stager's injuries. Rather, the Complaint offers only vague and conclusory allusions to "customs" and "policies." (*E.g.* Doc. 1, #8 ("As a direct and proximate result of the customs, policies, and practices described herein and permitted by Defendant Lawless, which violate the Fourth Amendment on their face, or otherwise are applied in a manner such that Fourth Amendment violations are likely to occur …")). The Supreme Court has instructed, though, that the Court may disregard "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. As that is all that Stager offers here, he has failed to plausibly allege an official policy,

and thus cannot rely on that avenue as the basis for his official-capacity § 1983 claims.

### b. Ratification

The Complaint also fall short on a ratification theory. "The Sixth Circuit recognizes two methods for finding ratification: (1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision[,] … thereby adopting it as municipal policy, and (2) when a policymaker fails to meaningfully investigate the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018); *see also Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020) ("A plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct."); *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("Ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate.").

Stager has not alleged facts suggesting that Lawless—or another official with final decision-making authority—ratified Hanshaw's conduct under either method. The closest he comes is when he alleges Hanshaw's "actions were ratified and adopted by Defendant Lawless, rendering Defendant Lawless vicariously liable for his conduct." (Doc. 1, #9). But that single, conclusory assertion is all he says on the matter, and he alleges no facts to support that bare allegation. For example, Stager does not allege Hanshaw called Lawless while arresting him, that Lawless was

10

present during his arrest, or that Lawless had any other direct role in his arrest. Nor does he explain how Lawless failed to investigate and punish Hanshaw's misconduct, or how he otherwise "issue[d] a final decision affirming" Hanshaw's actions . So, once again, the Court treats the allegation of "ratification" as conclusory and disregards it. *Iqbal*, 556 U.S. at 678. The official-capacity § 1983 claims therefore cannot survive the Partial Motion to Dismiss based on a ratification theory.

### c. Inadequate Training Or Supervision

That brings the Court to the third issue: "the existence of a policy of inadequate training or supervision." *Burgess*, 735 F.3d at 478. "A failure-to-train claim … requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* (cleaned up). Stager's problem is that he once again fails to allege *facts* giving rise to a reasonable inference that he could make this showing. So his claim falls short on this front.

Stager points to three categories of allegations to support his argument that he has met his pleading burden. First, Stager claims Defendants "conceded" he plausibly alleged Count V (which he labels a claim "for Failure to Hire, Train, and Supervise, and for Customs, Policies, and Practices causing violations of the Fourth Amendment"), so they are "on notice" as to the content of his allegations about inadequate training. (Doc. 8, #57). Second, Stager alleges Hanshaw was previously the subject of felonious assault charges, which also sparked a related civil suit. (Doc.

11

1 , #8). And third, he says that "[u]pon information and belief, there have been other instances of complaints made to Defendant Lawless and/or the Lawrence County Sheriff's Office concerning Deputy Hanshaw's excessive use of force." (*Id.*).

To start, the concession argument misses the mark. True, Defendants characterize Stager's Complaint as "appear[ing] to assert three out of the four avenues" for establishing a viable § 1983 claim. (Doc. 6, #28). But that statement merely characterizes Stager as *attempting* to assert those avenues; Defendants do not concede that Stager has successfully done so. So Stager cannot rely on that "concession" to support his arguments.

The other two allegations to which he points are insufficient for three reasons. First, the allegation about "other instances of complaints" is too vague. "[W]ithout more, vague allegations that previous cases are like this case in some unspecified way(s) are simply not enough to show a pattern of unconstitutional conduct that ought to have put Defendants on notice." *Dillon v. Hamlin*, No. 1:23-cv-103, 2024 WL 707289, at *6 (S.D. Ohio Feb. 21, 2024); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 751 (S.D. Ohio 2022) ("Assi's allegations that there had been previous lawsuits regarding unconstitutional conduct at the LCJ are vague—failing to provide specifics as to the nature of the alleged unconstitutional conduct (aside from the fact that one suit against Hanshaw alleged excessive force) and the outcome of those lawsuits."). Nor do allegations about previous complaints, standing alone, satisfy the requirement. *See Stanfield v. City of Lima*, 727 F. App'x 841, 852 (6th Cir. 2018) ("The mere existence of complaints, without more, is not sufficient evidence to allow a

12

reasonable jury to find the existence of a clear and persistent pattern of illegal activity."). And Stager compounds his vagueness by "fail[ing] to cite to any specific internal complaints filed against [Hanshaw], and say[ing] nothing of how those internal complaints were resolved." *Laning v. Doyle*, No. 3:14-cv-24, 2015 WL 710427, at *11 (S.D. Ohio Feb. 18, 2015). In short, Stager's passing reference to "other instances of complaints" does not cut it.

Second, while Stager's allegation about Hanshaw's previous criminal charge in 2014 is more specific, it at most shows a single instance of unconstitutional conduct of which the County was, or should have been, aware. That is a problem because one prior instance does not constitute a history of rights violations that ought to have put Defendants on notice that their training was inadequate. *See Assi*, 625 F. Supp. 3d at 750 ("[T]he Sixth Circuit has emphasized that there must have been a sufficient number of prior incidents of a sufficiently similar type of misconduct to demonstrate that a municipal entity was on notice or constructive notice."). "After all, 'history' implies repetition, not a one-off instance." *Dillon*, 2024 WL 707289, at *7.

And in a similar vein, "[i]t is well-settled that a plaintiff must do more than prove that a single officer was improperly trained or out of control, even if the [County] had been aware of past complaints against that particular officer." *Maruschak v. City of Cleveland*, No. 1:09 cv 1680, 2010 WL 2232669, at *5 (N.D. Ohio May 28, 2010). So even if Stager's Complaint plausibly alleged that Hanshaw was poorly trained, that would not be enough to meet his pleading burden.

13

Stager's official-capacity § 1983 claims thus cannot survive the Partial Motion to Dismiss based on an inadequate training or supervision theory.

### d. Inaction

Finally, the Court concludes Stager has not plausibly alleged a custom of tolerance or acquiescence to federal rights violations. The "inaction theory," under which a policy of tolerating federal rights violations "is unwritten but nevertheless entrenched," has four elements. *Thomas*, 398 F.3d at 429. To prevail on that theory, a plaintiff must show: (1) "a clear and persistent pattern" of rights violations; (2) "notice or constructive notice on the part of the defendant"; (3) "the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction"; and (4) a causal link between the custom and the constitutional deprivation. *Id.* Although the third and fourth elements differ from a failure-to-train claim and the "inaction" theory encompasses things other than inadequate training, such as inadequate after-the-fact investigations, the first two elements are substantially the same as the elements of a failure-to-train claim. Plaintiffs bringing either type of claim must show (1) a history of rights violations such that (2) the defendants were on notice.

Those similarities between the failure-to-train and inaction theories mean Stager falls short here for the same reasons already discussed in the previous section: he has plausibly alleged neither a clear pattern of rights violations nor notice. Vague, conclusory allegations do not clear that hurdle. So his official-capacity § 1983 claims cannot survive on an inaction theory, either.

\*  \*  \*

In short, Stager's only allegations in any way tying the events that allegedly occurred here to Lawrence County are vague and conclusory. And because that tie is an essential element of his official-capacity § 1983 claims, those claims fail. *Terry*, 604 F.3d at 275–76. Accordingly, the Court dismisses the official-capacity portions of all of Stager's § 1983 claims (Counts I, II, III, V, and VIII) for failure to state a claim. But because this is a first dismissal, the Court dismisses these claims without prejudice.

## B.     The Individual-Capacity Claims Against Lawless

Next, the Court considers the individual-capacity § 1983 claims against Lawless, which Stager includes as portions of Counts V and VIII. Defendants argue Stager has also failed to state a claim on which relief can be granted against Lawless in his individual capacity as to any of these claims, because Stager has failed to allege that Lawless (the Sheriff), in his role as Hanshaw's (the Deputy's) supervisor, had any personal involvement in the events or ratified Hanshaw's conduct. (Doc. 6, #34–35; *id.* at #35 ("The Complaint is devoid of any allegation that Defendant Lawless had contemporaneous knowledge of Hanshaw's alleged conduct. … Additionally, there is no allegation that Defendant Lawless somehow encouraged or condoned the alleged actions of Defendant Hanshaw.")). The Court agrees.

"The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that

15

violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Further, vicarious liability is not a plausible legal theory under § 1983. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Rather, to successfully sue Lawless as Hanshaw's supervisor, Stager would need to allege that Lawless "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (cleaned up). And mere after-the-fact knowledge of the offending conduct is insufficient. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) ("[A] supervisory official's failure to supervise, control, or train the offending individual is not actionable, unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." (cleaned up)).

Stager offers only a few conclusory allegations to support his claim against Lawless, and those allegations fail to create a reasonable inference of a plausible claim. To start, Stager never alleges Lawless was directly involved in his arrest via either in-person presence or a phone call. So his only possible basis for holding Lawless accountable is some form of supervisory liability. While Lawless was admittedly Hanshaw's supervisor, Stager does not allege Lawless specifically encouraged the illegal conduct at issue here. His only allegations that could be construed as even pointing in that direction are his allegations that Hanshaw's "actions were ratified and adopted by Defendant Lawless, rendering Defendant Lawless vicariously liable for his conduct." (Doc. 1, #9). But again, this is merely a

"formulaic recitation of the [necessary] element[]," so it "will not do." *Iqbal*, 556 U.S. at 678. Because Stager has failed to plausibly allege Lawless's direct or indirect involvement in the events at issue, the Court dismisses those portions of Counts V and VIII directed at Lawless in his individual capacity. But again, because this is a first dismissal, the Court dismisses those claims without prejudice.

## C. The Malicious Prosecution Claim

In terms of federal-law claims, that leaves only Defendants' argument that Stager failed to state a § 1983 malicious prosecution claim. (Doc. 6, #36–37). For that claim to survive the Partial Motion to Dismiss, Stager must allege sufficient facts to create a reasonable inference that he could show the four elements of a Fourth Amendment malicious prosecution claim: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "a lack of probable cause for the criminal prosecution"; (3) "a deprivation of liberty … apart from the initial seizure"; and (4) that "the criminal proceeding[s] [were] resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up). "Such a claim requires that all four elements are met, so if a plaintiff fails to demonstrate even one element, then the claim must fail." *Knight v. Columbus Div. of Police*, No. 2:13-cv-1271, 2014 WL 4557639, at *2 (S.D. Ohio Sept. 12, 2014).

Here, Defendants argue Stager has failed to allege that he "suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure." (Doc. 6, #36). Stager responds to that argument not by reference to any allegations in

his Complaint, but rather by averring in his opposition brief that: "Participation in a pretrial release program constitutes a deprivation of liberty separate from the initial seizure. As such, Mr. Stager has sufficiently pled a malicious prosecution claim under 42 U.S.C. § 1983." (Doc. 8, #58 (cleaned up) (citing *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017)). That argument fails to save Stager's claim for two reasons.

First, in assessing plausibility, the Court cannot consider new factual allegations in Stager's Opposition. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("The court may not take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." (cleaned up)). So Stager must rely solely on the allegations in the Complaint.

But the Complaint itself, standing alone, simply does not plausibly allege a separate deprivation. Rather, it merely alleges that Hanshaw unlawfully arrested Stager, and that "[t]he matter proceeded to the Ironton (OH) Municipal Court where it was resolved by the prosecutor's entry of a *nolle prosequi*." (Doc. 1, #3–4). Nowhere does the Complaint allege Stager participated in a pretrial release program. And even "liberal construction [of pro se pleadings] does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (cleaned up). So Stager has not plausibly alleged the third element set forth in *Sykes*.

Moreover, even if the Court could consider the new factual allegations from the Opposition, they would still fall short. Sixth Circuit case law suggests that not all pretrial release programs supply the necessary "liberty deprivation." Perhaps most

18

importantly, own recognizance bonds that impose no requirements on the defendant beyond appearing in court and updating the court with his address if he moves are not "deprivations of liberty" sufficient to support a malicious prosecution claim. *Cummin v. North*, 731 F. App'x 465, 472 n.4 (6th Cir. 2018) ("[T]he only 'conduct' he needed to conform was keeping the court apprised of his current address and appearing when required at court[.] … This does not rise to the deprivation of liberty present in the other cases Cummins cites."). Against that backdrop, Stager never alleges any specific details about why the pretrial release program in which he allegedly participated would amount to a deprivation of liberty. All he says is that he "was released from jail and placed on a recognize [sic] bond when the first charge against him was filed on February 28, 2022." (Doc. 8, #58). That does not give rise to a reasonable inference that Stager suffered a deprivation of liberty. Accordingly, the Court dismisses the malicious prosecution claim (Count VII) against all Defendants, but again does so without prejudice.

### D.   False Imprisonment

Having addressed the federal-law claims, the Court turns to Stager's state-law claims. Start with an easy one. As Defendants correctly point out, (Doc. 6, #39–40), "the tort of false imprisonment concerns purely a matter between private persons for a private end, … [so] this Court has held that any [tort] claim for false imprisonment against a government actor must fail." *Kareva v. United States*, 9 F. Supp. 3d 838, 845 (S.D. Ohio 2014). Here, Count IV is alleging a false imprisonment tort claim against Hanshaw—a government actor. So the Court dismisses Count IV, which fails

as a matter of law. And because Stager cannot address that deficiency with additional factual allegations, the Court dismisses Count IV with prejudice.

## E. Intentional Infliction of Emotional Distress

Next, the Court turns to the IIED claim. An Ohio-law IIED claim has four elements: (1) "that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff"; (2) that the conduct at issue "was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community'"; (3) that the conduct was "the proximate cause of [the] plaintiff's psychic injury"; and (4) "that the mental anguish suffered by [the] plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Pyle v. Pyle*, 463 N.E.2d 98, 103 (1983) (citing Restatement of Torts 2d (1965)). Defendants argue Stager never alleges Lawless was present at the scene, let alone engaging in conduct that was "extreme and outrageous," so the IIED claim against Lawless fails as a matter of law. (Doc. 6, #40–41). Plaintiff never addresses this argument in his Opposition. Once again, the Court agrees with Defendants.

The Complaint lacks any specific factual allegations about Lawless's conduct. And vague, conclusory allegations like "[t]he acts and conduct of the Defendants as set forth above is extreme and outrageous," (Doc. 1, #10), fail to clear the plausibility hurdle. As it did above, the Court disregards such allegations. *Iqbal*, 556 U.S. at 678. So Count VII, as it pertains to Lawless, fails as a matter of law. And because that was the last remaining claim against Lawless, the Court dismisses him without

prejudice as a Defendant. Moreover, because he is no longer a Defendant, the Court need not, and thus does not, discuss whether he is entitled to statutory immunity in the next section.

**F.** **State-Law Immunity**

That brings the Court to the final issue necessary to resolve the pending motion—whether Hanshaw has immunity to the remaining state-law claims against him: the individual- and official-capacity state-law claims for assault and battery and IIED. Because the immunity framework varies for official-capacity and individual-capacity claims, the Court discuss them separately, beginning with the official-capacity claims. As more fully discussed below, the Court concludes Hanshaw is entitled to immunity on the official-capacity claims, but not on the individual-capacity claims.

**1.** **The Official-Capacity Claims**

Although Stager names each Defendant in his official capacity, this is collectively a claim against Lawrence County—a political subdivision under Ohio law. *Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010); *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 542–43 (6th Cir. 2015) ("Federal courts have held that sheriffs and sheriff's deputies are considered employees of the county, which is a political subdivision of the state."). As a result, the Court must consider the applicability of Ohio Revised Code § 2744.02, which governs political subdivision immunity as against state-law claims. *Lambert*, 927 N.E.2d at 591.

The Court applies a "three-tiered analysis" to determine whether Hanshaw, in his official capacity, is entitled to political subdivision immunity. *Wallace v. City of Rossford*, 2018-Ohio-2598, ¶ 27 (6th Dist.) (quoting *Rosenbrook v. Bd. of Lucas Cnty. Comm'rs*, 33 N.E.3d 562, 567 (Ohio Ct. App. 2015)). Those three tiers are: (1) "whether the general grant of immunity provided by [Ohio Rev. Code §] 2744.02(A) applies," (2) "whether immunity has been abrogated by the exceptions set forth in [Ohio Rev. Code §] 2744.02(B)," and (3) "[i]f an exception applies, … whether the political subdivision is able to successfully assert one of the defenses listed in [Ohio Rev. Code §] 2744.03, thereby reinstating its immunity." *Id.*

First, under § 2744.02(A), a political subdivision has immunity when acting "in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). Here, no one disputes Lawrence County purported to exercise its police power when arresting Stager. So the general grant of immunity applies.

Second, § 2744.02(B) affords a political subdivision immunity for any torts committed by the subdivision's agents or employees unless liability for that conduct arises under one of subsections (B)(1) through (B)(5). Ohio Rev. Code § 2744.02(B)(1)–(5). But here, the torts that Stager alleges—IIED and assault and battery—are intentional torts. *Price v. Austintown Loc. Sch. Dist. Bd. of Educ.*, 897 N.E.2d 700, 705 ("We agree that [defamation] is usually classified as intentional, along with such torts as assault, battery, false imprisonment, trespass, conversion, intentional infliction of emotional distress, and fraud."). And "the exceptions of [Ohio Rev. Code §] 2744.02(B)(1) through (B)(4) are limited to negligent conduct, [so] the only

exception that could apply to an intentional tort claim is … [Ohio Rev. Code § ] 2744.02(B)(5)." *Bonkoski v. Lorain County*, 115 N.E.3d 859, 863–64 (Ohio Ct. App. 2018) (cleaned up). To take advantage of that exception, Stager must show that "civil liability is expressly imposed upon the political subdivision by a section of the Revised Code," Ohio Rev. Code § 2244.02(B)(5). *Bonkoski*, 115 N.E.3d at 863–64; *DSS Servs., LLC v. Eitel's Towing, LLC*, 2019-Ohio-3158 , ¶¶ 32–33 (10th Dist.).

Stager cannot make that showing. "[C]ourts have determined that no section of the Revised Code expressly imposes liability upon a public agency for assault, battery, infliction of emotional distress, false arrest, malicious prosecution, or civil conspiracy." *Griffits v. Newburgh Heights*, 2009-Ohio-493, ¶ 26 (8th Dist.) (collecting cases); *see also Hubbard v. Canton City Sch. Bd. of Educ.*, 780 N.E.2d 543, 546 (superseded by statute on other grounds) ("[T]here are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress."). So he has no official-capacity claim.

Stager attempts a workaround by pointing to a separate statute providing that "[t]he sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies" the deputy's conduct. Ohio Rev. Code § 311.05. Based on that language, Stager argues that Lawrence County is liable because Lawless "ratified" Hanshaw's conduct, which makes him liable under § 311.05. (Doc. 8, #60–61).

23

That does not work for two reasons. First, on its face, § 311.05 imposes liability on *the Sheriff*, not the county. That is, § 311.05 could at most make Lawless, and only Lawless, individually liable for Hanshaw's conduct. It is not a vehicle for making *the County* liable for that conduct. *Whitler v. McFaul*, No. 75163, 2000 WL 263262, at *7 (Ohio Ct. App. Mar. 9, 2000) ("This language, in other words, requires the claimant, rather than the sheriff, to put forth evidence showing a degree of 'intent' on the part of the sheriff as it applies to the negligent or intentional conduct of his deputies in order *to hold the sheriff individually liable for such conduct*.") (emphasis added)). Second, as discussed above, the Complaint contains no factual allegations to support any argument that Lawless ratified or participated in Hanshaw's conduct. So even if the statute could serve to provide a link between Hanshaw and the County, the Court finds it is not triggered here.

Because no exception to statutory immunity applies, the Court need not consider the third tier of the immunity analysis. Accordingly, Lawrence County remains immune under § 2744.02(A)—as does Hanshaw to the extent that he is sued in his official capacity—on the state-law claims for IIED and assault and battery. So the Court dismisses those claims without prejudice.

## 2. The Individual-Capacity Claims

Finally, the Court turns to the individual-capacity state-law claims against Hanshaw. Ohio Revised Code § 2744.03 grants government employees acting within the scope of their official responsibilities statutory immunity with some limited exceptions. *Shelton v. Twin Twp.*, 30 N.E.3d 1047, 1053 (Ohio Ct. App. 2015). Under

24

the relevant exceptions, government officials are not entitled to immunity on individual-capacity claims when "[t]he employees' acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," or when the Ohio Revised Code expressly imposes statutory liability for the conduct at issue. Ohio Rev. Code §§ 2744.03(A)(6)(b)–(c). As discussed above, the Ohio Revised Code does not expressly impose statutory liability on Hanshaw. So the question is whether the allegations give rise to an inference of malice, bad faith, or recklessness. And the Court determines that, because they do so, Hanshaw is not entitled to individual statutory immunity.

Stager alleges Hanshaw found him sleeping in his car, opened his door, battered him with "unnecessary and dangerous physical maneuvers," arrested him, and filed a criminal complaint against him. Those allegations create a reasonable inference that Hanshaw's conduct was reckless, malicious, or done in bad faith, as they suggest an unreasonable course of conduct with a cavalier disregard for the obvious consequences of such escalation. *See Raimey v. City of Niles*, 77 F.4th 441, 451 (6th Cir. 2023) ("Relevant here, reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." (cleaned up)); *see also Waddell v. Lewis*, No. 1:22-cv-635, 2024 WL 1071900, at *6 (S.D. Ohio Mar. 12, 2024) (holding that the defendants were not entitled to immunity when, among other actions, one of them struck one of the plaintiffs in the face, threw him from the front porch, and pepper sprayed him twice in the face while

25

he was on the ground). Hanshaw is therefore not entitled to statutory immunity on the individual-capacity claims against him, despite Defendants' arguments to the contrary. So the individual-capacity claims against Hanshaw for assault and battery (Count VI) and IIED (Count VII) may proceed.

## CONCLUSION

For the above reasons, the Court **GRANTS IN PART** Defendants' Partial Motion to Dismiss (Doc. 6). Accordingly, it **DISMISSES** Counts I, II, III, and V to the extent that those counts include official-capacity claims against Hanshaw and Lawless, likewise **DISMISSES** Count V against Lawless in his individual capacity, and **DISMISSES** the § 1983 malicious prosecution claim (Count VIII) in its entirety. The Court also **DISMISSES** the IIED claim against Lawless (Count VII). As a result, it **DISMISSES** Lawless as a Defendant. But because this is a first dismissal, and because Stager could perhaps address at least some of the defects noted above, all the above dismissals are **WITHOUT PREJUDICE**.  Finally, the Court dismisses the state-law false imprisonment claim against Hanshaw (Count VI) in its entirety **WITH PREJUDICE**, as Stager cannot address the deficiencies in that claim by pleading additional factual allegations. And the Court **DENIES** the Partial Motion to Dismiss as to the remaining individual-capacity claims against Hanshaw for assault and battery (Count VI) and IIED (Count VII). Accordingly, as things stand, this case will proceed solely on the individual-capacity claims against Hanshaw in Counts I, II, and III (the three claims Defendants never sought to dismiss), along with

the individual-capacity claims against Hanshaw in Counts VI and VII (the two claims as to which the Court denies Defendants' Partial Motion to Dismiss).

      **SO ORDERED.**

April 10, 2024
_____
**DATE**

                             _____
                             **DOUGLAS R. COLE**
                             **UNITED STATES DISTRICT JUDGE**